UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JULIAN SMITH, | § | |
| | § | |
| PLAINTIFF, | § | Case No. 4:18-cv-00025 |
| | § | |
| v. | § | |
| | § | |
| REAL PAGE, INC., | § | **JURY DEMANDED** |
| | § | |
| DEFENDANT. | § | |

FIRST AMENDED COMPLAINT

COMES NOW the plaintiff Julian Smith ("Plaintiff" or "Mr. Smith"), and pursuant to Fed.
R. Civ. P. 15(a)(1)(B), by and through his undersigned counsel, and alleges as follows:

PRELIMINARY STATEMENT

1.      This is an action for actual damages, punitive damages, costs and attorney fees
pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA").

2.      The FCRA is a comprehensive statutory scheme governing the conduct of a
consumer reporting agency ("CRA").

3.      Congress recognized that CRAs such as Defendant Real Page, Inc. "have assumed
a vital role in assembling and evaluating consumer credit and other information on consumers."
15 U.S.C. § 1681(a)(3). Therefore, Congress found that there "is a need to insure that consumer
reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for
the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

4.      To achieve accuracy of consumer reports, which can include criminal record
information, the FCRA requires that when a CRA prepares a report, it must "follow reasonable

1

procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

5.      A consumer can notify a CRA that the consumer disputes the accuracy or completeness of any information in their file. Upon notification of the dispute, the FCRA requires that the CRA conduct a reasonable reinvestigation of the disputed information to determine if the information is accurate.  The CRA must notify the source of the disputed information about the consumer's dispute.  The CRA must provide the source with all relevant information received from the consumer about the dispute.  The CRA must review and consider all relevant information provided by the consumer in conducting the reinvestigation.  The CRA must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified.  The CRA must complete the reinvestigation within 30 days, or within 45 days if the dispute is based on a free annual credit report.

6.      The CRA must send the consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation. 15 U.S.C. § 1681i(a).

JURISDICTION & VENUE

7.      This court has jurisdiction under 15 U.S.C. § 1681p.

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

9.      Plaintiff Julian Smith ("Plaintiff") is a consumer as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a resident of Nevada.[1]

---

[1] Mr. Smith intends on moving back to Miami, Florida, for work, in or around August or September of 2018.

10.    Defendant Real Page, Inc. ("Defendant" or "Real Page") is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f). In all respects and all times relevant herein, Real Page was doing business in this judicial district.  Real Page maintained its principal place of business in this district located at 4000 International Parkway, Carrollton, Texas 75007, until as early as September 2016 when it signed a new lease for its new headquarters in Richardson, Texas.[2] According to the Dallas Morning News, Real Page didn't "take the wraps off its new corporate headquarters on North Central Expressway" until April 27, 2017.[3] In Real Page is also registered to do business in the State of Florida.  On May 2, 2016, Real Page filed its Foreign Profit Corporation Annual Report with the Secretary of the State of Florida and listed its principal place of business as 4000 International, Pkwy., Carrollton, Texas 75007.[4]

## FACTUAL ALLEGATIONS

11.    In or around June 2014, Mr. Smith applied for housing at Southgate Towers ("Southgate"), which is located in Miami Beach, Florida.

12.    In connection with Mr. Smith's application for housing, Southgate required Plaintiff to undergo a background check to determine his eligibility for housing.

13.    Real Page received a request for a consumer report concerning Mr. Smith in connection with his application for housing at Southgate.

---

[2] https://www.realpage.com/news/realpage-leases-400000-square-foot-corporate-headquarters/
Last visited April 26, 2018.

[3] https://www.realpage.com/news/former-telecom-corridor-hub-gets-new-life-realpage-hq/
Last visited April 26, 2018.

[4] http://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=forp-
f06000001492-56382fb0-35f5-4dff-827a-712008be7663&transactionId=f06000001492-
4dd89ac4-c3ba-4d9f-85ec-6ba89d02d59f&formatType=PDF
Last visited April 27, 2018.

14.     Southgate obtained a consumer report related to Plaintiff from Real Page.

15.     On or about June 5, 2014, Real Page notified Mr. Smith that Southgate took adverse action against him, based in whole or in part on information obtained in a report from Real Page.

16.     The June 5, 2014 notice from Real Page was addressed to Mr. Smith at the following mailing address: 900 West Ave, Miami Beach, Florida 33139.

17.     The June 5, 2014 notice informed Mr. Smith that he could make a dispute to Real Page located at 4000 International Parkway, Carrollton, Texas, 75007.

18.     The June 5, 2014 notice also directed Mr. Smith to contact Southgate at 900 West Ave, Miami Beach, FL 33139, with any questions related to Real Page's notice or Southgate's rental standards.

19.     Upon information and belief, on or about September 2014, Real Page prepared another consumer report, which related to Mr. Smith with a current address in Miami Beach, Florida, in connection with Mr. Smith's rental application and at the request of Southgate in Miami, Florida.

20.      After living at Southgate from 2012 to 2015, in or around August or September 2015, Mr. Smith transferred with his job from Miami, Florida to Atlanta, Georgia.

21.     Upon information and belief, on or about September 2015, Real Page prepared another consumer report, in connection with Mr. Smith's application for housing, which related to Mr. Smith at the request of a third party.

22.     In or around January 2016, Mr. Smith transferred with his job back to Miami, Florida.

23.     Mr. Smith returned to his employment in the South Beach area.

24.     Mr. Smith leased a moving truck in Atlanta, Georgia and drove to Miami, Florida.

25.     Because Mr. Smith previously lived at Southgate, he was confident that he would be eligible to rent from Southgate again.

26.     The Southgate residence Mr. Smith applied for is managed by Urban Resource Real Estate and Property Management ("Urban"), which is located at 1193 71st Street, Miami Beach, Florida, 33141.

27.     On or about January 10, 2016, Real Page prepared a consumer report in connection with Plaintiff's application for housing and sent it to Southgate or Urban, or both, in Miami Beach, Florida.

28.     The consumer report prepared by Real Page included inaccurate information[5], in violation of the FCRA, § 1681e(b).

29.     From Miami, Mr. Smith called Real Page on or about January 10, 2018, and he disputed the inaccurate information.

30.     In the consumer report, Real Page falsely reported that Mr. Smith had been convicted of the following crimes in Georgia:

a.  Giving police false name/info-m

b.  Possession of marijuana <1 oz

c.  Possess drug related object

d.  Possession of sched IV substance

e.  Sale/dist of marijuana

f.  Robbery

---

[5] The inaccurate information reported by Real Page is not limited to criminal history; for example, Prior to filing this lawsuit, Real Page reported Mr. Smith's gender as "Female."

31.     The above-listed convictions are untrue because Plaintiff has not been convicted of these crimes.

32.     In fact, the criminal records provided by Real Page and listed in Paragraph 30 belong to another person.

33.     Plaintiff is not a criminal.

34.     When preparing Mr. Smith's consumer report, Real Page mixed information from another person with Plaintiff.

35.     As a result of the false criminal history in the Real Page report, Mr. Smith was not eligible to rent from Southgate.

36.     Upon information and belief, Real Page reported to Southgate or Urban, or both, that Plaintiff's criminal history made him ineligible for approval of his housing application.

37.     As a result of the Real Page consumer report, Southgate denied Mr. Smith's housing application.

38.     Southgate notified Mr. Smith that he was ineligible for housing due to "Criminal history unsatisfactory."

39.     More specifically, Mr. Smith received a notice dated January 10, 2016, regarding his application for housing at Southgate, which stated:

> Thank you for your recent application.  Your request for a leasing agreement was carefully considered and we regret that we are unable to approve your application at this time for the following reason(s):
>
> Criminal history unsatisfactory

(January 10, 2016, Adverse Action Notice).

40.     Further, the Adverse Action Notice stated, *inter alia*:

If you have a question on the completeness or accuracy of the information used to create the consumer report, you have the right to dispute the matter by contacting the consumer reporting agencies listed below:

RealPage, Inc.
4000 International Parkway
Carrollton, Texas 75007
(866) 934-1124
http://www.realpage.com/consumer-dispute

If you have a question about this notice or the community's rental standards, please contact the submitting property.

Southgate Towers
900 West Ave
Miami Beach, FL 33139-5233, US

Sincerely,

Southgate Towers

(January 10, 2016, Adverse Action Notice).

41.     When Mr. Smith learned he was not approved to live at Southgate he was devastated.  He had his belongings with him in a moving truck, but no place to go.  He spent the day driving around Miami looking for another apartment without success.

42.     Mr. Smith incurred out-of-pocket expenses as a result of Real Page's unlawful conduct.

43.     Mr. had to extend the truck rental at an additional cost.

44.     Mr. Smith had to take time off from work.

45.     Mr. Smith had to hire movers twice, once to unload his belongings into a temporary home, and a second time when he found another apartment.

46.     Mr. Smith suffered emotional distress as a result of Real Page's unlawful conduct.

47.     Mr. Smith's former neighbors at Southgate observed his distress.

48.     Mr. Smith's former co-workers in South Beach observed his distress.

49.     Employees at Southgate Towers, including the manager, sales representatives and security guards knew of Mr. Smith's situation.

50.     Mr. Smith was forced to stay with two friends in the Miami area for another month before he was able to rent a smaller over-priced studio apartment at a different complex in the Miami, Florida.

51.     From Miami, Mr. Smith called Real Page and disputed the false information.

52.     In or around September 2016, Mr. Smith notified Real Page again that he disputed the accuracy of the criminal record information it reported about him.

53.     Real Page received Mr. Smith's dispute in or around September 2016 or October 2016.

54.     In response to Plaintiff's dispute, Real Page did not delete the disputed information from his file.

55.     Real Page did not reinvestigate the disputed criminal history in Mr. Smith's file.

56.     Real Page did not provide Mr. Smith with its reinvestigation results related to the disputed criminal history.

57.     Mr. Smith also requested Real Page to provide him with his file.

58.     Real Page received multiple requests from Plaintiff for his file.

59.     On multiple occasions, Real Page failed to provide Plaintiff with his file, as that term is defined by the FCRA.

60.     At all times pertinent hereto, the conduct of the defendant as well as that of its agents, servants and/or employees, was intentional, willful, reckless, negligent, and in grossly negligent disregard for federal law, state law and the rights of the Plaintiff herein.

## FIRST CLAIM FOR RELIEF

(against Real Page)
(Negligent Noncompliance with the FCRA)

61.     Plaintiff realleges and incorporates the above numbered paragraphs.

62.     Real Page negligently failed to comply with the requirements of the FCRA, including but not limited to Sections 1681e(b), i, and g.

63.     As a result of Real Page's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of housing, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

64.     Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681o(a).

## SECOND CLAIM FOR RELIEF

(against Real Page)
(Willful Noncompliance with the FCRA)

65.     Plaintiff realleges and incorporates the above paragraphs.

66.     Real Page willfully failed to comply with the requirements of the FCRA, including but not limited to Sections 1681e(b), i, and g.

67.     As a result of Real Page's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of housing, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

68.     Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681n(a).

69.     Plaintiff demands a trial by jury on all claims.

<u>Prayer</u>

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

On the First Claim for Relief:

1.      Actual damages; and

2.      Costs and attorney fees.

On the Second Claim for Relief:

1.      Actual damages;

2.      Statutory damages, punitive damages; and

3.      Costs and attorney fees.

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins
(TX Bar No. 24088777)
**THE ADKINS FIRM, P.C.**
7100 Executive Center Drive, Suite 110
Brentwood, TN 37027
Telephone:    615-370-9659
Facsimile:    615-370-4099
Email:        MicahAdkins@ItsYourCreditReport.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2018, I filed the foregoing paper using the CMECF System, which will send electronic notification of same to the following counsel of record:

Virginia Bell Flynn
Troutman Sanders
4320 Fairfax Avenue
Dallas, Texas 75205

*/s/ Micah S. Adkins*
Micah S. Adkins